Good morning. May it please the court, counsel. My name is Heather Quick and I represent the defendant, Airrington Sykes. The district court erred in denying Mr. Sykes' motion to suppress. The court determined that law enforcement had a reasonable suspicion that Mr. Sykes possessed a firearm and that this provided justification for both the Terry stop and frisk. Three separate grounds require reversal of the denial of the motion to suppress. First, law enforcement cannot presume that any potential concealed carry of a firearm is unlawful. In the state of Iowa, individuals can concealed carry with a valid permit. Alternatively, law enforcement here did not have reasonable suspicion that Mr. Sykes was concealed carrying a firearm. I know you're just giving us the overview, but on your first point, does it make a difference under concealed carry whether it's loaded or unloaded? I don't believe so, Your Honor. Okay, proceed. And finally, the third reason for reversal is that the frisk was not justified because Terry is a two-pronged analysis which requires that an individual be both armed and presently dangerous. Law enforcement here did not have any basis to believe that Mr. Sykes was dangerous. Turning to the first reason for reversal, in Iowa, law enforcement cannot presume that any potential possession of a firearm is unlawful. Of course, the first question in Terry is, what is the actual crime that law enforcement believes is being committed? Here, the district court and the government relies on Iowa's carrying weapons statute. What's notable and relevant in this case is that that carrying weapons statute contains an exception stating that it does not apply to individuals who have a valid concealed carry permit. While there's no case directly on point in this circuit, the Duffy case and Judge Loken's concurrence in Jones indicate that law enforcement cannot presume that an individual in Iowa possesses a firearm illegally or does not. I'm sorry, do you think Duffy was a case that reached a substantive question of reasonableness for Terry Stomp, or was it a case that simply spoke to the reliability of the information that the officer had, assuming that it would have been perhaps sufficient had that information been reliable? Is this a reliability case? Is Duffy a reliability case, or is it a case that reaches a substantive question? Duffy doesn't reach the exact question presented here, but why Duffy is instructed, that was a 1983 case. And there, that was in Nebraska, and there was at least a basis to believe that an individual had a firearm. There, the court found it troubling that law enforcement, while they might have had information that an individual had a firearm, had no basis to believe that that potential possession was unlawful. No, that's not answering my question. The question is whether that case actually reaches the issue that this case presents, or whether, do you think this, in other words, do you think Duffy rules this case? I do not, but I think it's incredibly instructive and helpful to the analysis. Okay, thank you for that. And based on the principles specifically in Judge Loken's concurrence in the Jones case, really hits on the main points for why other courts have also rejected that law enforcement officers can presume that the concealed carry of a firearm is illegal. As Judge Loken noted in Nebraska, as is similar to Iowa, our legislature has made clear that a significant portion of the population has the right to, and can, possess a firearm in a concealed manner legally. In Northrop, the Sixth Circuit also noted that where potential possession can be lawful, unlawful possession should not be the default status. And that's consistent- In other words, should there be a presumption of legality? There should. In Iowa, if individuals have the right to and can possess a firearm legally, this would be a completely different case if law enforcement had reason to believe Mr. Sykes was a felon, or there was some other factor that was clear that he could not possess a firearm. What degree of information must an officer have before, in fact, he permits, as it were, someone who has an unlawfully possessed weapon walk away unscathed, as it were, or unapprehended? Reasonable suspicion. It doesn't take- which, of course, is a low standard, but- Or are you implicitly arguing for a higher standard in these situations? No, I'm not, Your Honor. All we're asking- In other words, if there were no Iowa statute, the search would have been fine? If there was no statute that indicated that an individual could concealed carry, yes, I think that this would be a whole different case. So there's a heightened standard, huh? If there was a- Let's see, what's your best case for the heightened standard rule? I'm not arguing for a heightened standard, Your Honor. All I'm asking for is the idea that for law enforcement to have- You're not arguing for it, but in the real world in which we judges live and which we have to take into account, I guess, the- subject to the constitutional requirements, we have to take into account the practical effect of our holdings? Maybe not. Well- Can justice be done? Oh, the heavens fall, I guess. The strongest case for the idea that law enforcement, to have a reasonable suspicion of criminal activity, has to have information that the possession itself is illegal- of course, Judge Loken's concurrence we rely heavily on- the Williamson case out of Tennessee and the Couture case out of Massachusetts. What criticism do you have of the Third Circuit's case? Gatlin, I believe it's called? It's inconsistent with Terry, Your Honor, in that Terry requires particularized suspicion that an individual is committing a crime. There, the Gatlin case writes out this requirement of particularized suspicion- What about the argument that the- that having a license is an affirmative defense and that therefore, essentially, having a concealed weapon is presumptively illegal? Other courts have rejected this argument under similar statutes in their jurisdictions. Under the- under the analysis, that is one thing to say, that at a trial, the defendant has the initial burden to put forth facts to show that he or she has a concealed carry permit, that they're not going to require the government to put that on, disprove the possession of a valid permit. It's another thing to say that an individual who is, by all accounts, exercising the right that the legislature has given them, that law enforcement can take intrusive action, can seize them, and in other cases, in the Couture case, order them out of their car. It's one thing to say, we don't have to disprove it at a trial, and all you have to do is come in with a piece of paper. It's another thing to say that your Fourth whether it's illegal or not. It's also inconsistent with the notion of requiring particularized facts, that law enforcement can presume it regardless of whether it's an affirmative defense or not. There are cases that take the position that when a factual situation is ambiguous, that is, it might involve a lawbreaker or might not, that a Terry stop is okay to resolve the ambiguity. Why isn't this such a case? There's a distinction between saying, law enforcement has reason to believe that conduct could be clearly criminal, to say, we're not sure if he's just giving his friend a package or maybe it's a drug transaction. But one of those options is clearly criminal. Here, there's two jumps that it would require law enforcement to make. Potentially, an individual has a concealed carry. It could be something innocent. It's a whole different ballgame to say, we don't even know if what that person is potentially doing is criminal, but we can just assume that it is. Other courts have rejected these kinds of jumps in different circumstances, most notably in marijuana cases, where other jurisdictions might have more lax laws on marijuana. In some jurisdictions, an individual can possess a small amount of marijuana for personal use. Courts have been critical of allowing law enforcement officers to presume that, for example, there's a case out of Massachusetts where a law enforcement officer smelled marijuana. And they said, that gives you reasonable suspicion that an individual might be smoking marijuana or have marijuana. But in Massachusetts, having a small amount of marijuana is legal. So you can't presume that that possession of marijuana is illegal when it might, in fact, be legal. I think there are laws that forbid the possession of certain kinds of machine guns. Isn't that right? I believe so. Suppose somebody's walking down the street. You can have a machine gun if you're a federally licensed gun dealer, right? I think. Assume with me that you can, all right? The law is something like that. So suppose someone is walking down the street with a machine gun. Could a law enforcement officer not stop for limited purposes to inquire? For instance, are you a federally licensed dealer or a howitzer? I mean, some people are allowed to have howitzers if they have the proper licenses. But surely a law enforcement officer could say, you know, not many people own howitzers legally. So is this the kind of case that turns on whether gun ownership is common in the jurisdiction? Is it a kind of statistical inquiry that we're supposed to make here? I think that makes it more persuasive, Your Honor. And that's what Judge Loken noted in his concurrence in the Jones case. I don't think it's necessarily common for individuals to have machine guns and be walking around with machine guns. But there is an indication that it is incredibly common in Iowa for individuals to concealed carry and have concealed carry permits. But in those situations and the concern of what is law enforcement officer to do when they believe that someone has a firearm? As other courts have noted, including Judge Loken, nothing prevents law enforcement officers from attempting to initiate a consensual encounter. From attempting to initiate a consensual encounter, Your Honor. So it's not as if in these situations that law enforcement can't do anything, they still... Would that include just saying, do you have a permit? Before I search you, do you have a permit for this weapon that I'm going to find or I think I'm going to find? Assuming that it was not a seizure at that point. Yes, Your Honor. I think that would be fine. I don't know why we're saying hmm, but I guess... Well, I'm wondering what the difference between a terrorist stop and a consensual encounter is, I guess. Well, here it was clearly a seizure in that the law enforcement officer grabbed Mr. Sykes' boots, directed him out of the bathroom, and told him to stop. Consensual encounter cases, if a law enforcement officer walks up and says, hey, is it okay if I talk to you for a second? Those are usually the kind of circumstances I see in consensual versus seizure cases. A quick factual point. It's never said in the record anywhere, any theory of how the woman's laundry basket, right? I never saw an explanation for that. Even a theory or a speculation or a guess, right? I don't believe so. Right. That's what I understand, too. Thank you. If there are no further immediate questions, I'd reserve the remainder of my time for rebuttal. You may do so. Thank you. We'll hear from counsel for the government. May it please the court? Good morning. You may proceed. Yes, Your Honor. Thank you. May it please the court? Counsel? Reasonable suspicion is a factual, intensive determination. It's interesting that we haven't really discussed the facts of this case yet this morning. This is a situation where police officers responded at nearly midnight to a laundromat where a loaded magazine had been found. Judge Benton, you're exactly correct. There's no good explanation for how this magazine got into this laundry basket. That gives you a suspicion of an unloaded gun, right? Not necessarily. Well, don't you think? I think it could go either way. You're getting a lot of jumps there, but go ahead. Yes, Your Honor. I don't think it's uncommon for people who carry handguns to carry more than one magazine. Go ahead. And in this particular case, there is no good explanation. But the facts show that there were only three people in the laundromat at the time this loaded magazine was found. The witness, civilian who called the police, and two individuals that were still at the laundromat when the police arrived. That basis gives the police reason to suspect one of those two people may have a gun. There was no magazine in the laundry basket at first. Then there was, and the woman said it's not hers. But these two people were in the laundromat and had been near this basket. We also can't ignore the facts of what happened after the officers entered the laundromat. As the magistrate judge found and the district court adopted, and you can be seen on the officer's body cam, after the two officers in full uniform entered the laundromat and turned down the aisle where the two individuals were located, the defendant and his friend, Michael, the defendant immediately turned and walked briskly towards the bathroom in order to secrete himself. I knew I was going to do that. Secret himself. Secreting himself would be much different. To secret himself in the bathroom away from the officers. That is incredibly suspicious behavior that this court and other courts have found is relevant to a determination of reasonable suspicion. So not only did they... He went past an exit, didn't he? He did, Your Honor. There were two doors located in the corner. One was an exit to leave the building and one was the bathroom. Brisk walks to the bathroom are not uncommon. I would agree, Your Honor. It is, however, suspicious that he did that as soon as he saw the police officers turn and begin walking towards him. Up until that point, the defendant may not have thought the officers were coming to talk to him, but as soon as they approached him or began to approach him, that's when he walked briskly. There are legions of cases that say you can walk away from the police officer and that's nothing. Why is this case different than those? In this case, it's because the suspicion of the gun is already there. It's not the walking away doesn't give the entire suspicion, but because the officers could reasonably believe one of these two individuals had a firearm, the defendant's actions then increase that reasonable suspicion and increase the danger. It's also important to focus on the danger that somebody armed at midnight in an area where there have been shootings in the past or at least one shots fired incident that this particular officer had responded to, as well as other assaults and other crime in the area. But your officer says it's a medium crime area. Your officer would not agree it was a high crime area, right? Correct, Your Honor. He did not say it was high crime. But this individual trying to go into the bathroom where he could lock the door, if he had a weapon, present a danger, hide the weapon, that increased not only reasonable suspicion because he tried to avoid the officers, but also increased the dangerousness that goes towards the second part of the Terry stopped, whether the individual was armed and dangerous. In regards to whether or not it's presumptively illegal to possess a gun in Iowa, Iowa code section 724. You mean a concealed weapon? Your Honor, it can be either way, actually. In this particular case, the government's relying mostly on the concealed weapon. The carrying weapon statute in Iowa also criminalizes being in the city with a handgun or any loaded firearm. So there could be other situations where it's illegal to possess a gun. In this case, the officers didn't see a gun on his person, so they had reasonable suspicion that it was concealed. But there could be facts in which other gun possession within the city limits could give reasonable suspicion for a Terry stop. Do you think it applies to unloaded weapons, too? It does, Your Honor. The concealed portion does apply to unloaded weapons, and the handgun portion does. If you're carrying a rifle in a city limits, that has to be loaded for it to violate the Iowa code. It is an affirmative defense in Iowa to have a concealed carry permit. But this court should not impose a standard upon officers that they have to disprove affirmative defenses before they are authorized to conduct an investigatory stop under Terry and ensure the safety of both themselves and the public. And what do you have to say about Judge Loken's dissent in the Jones case, or concurrence? I can't remember whether it was concurrence or dissent. Yes, Your Honor, it was a concurrence. The majority, or all three, determined that there was not reasonable suspicion in that case. Judge Loken went farther to argue that in Nebraska, where it's an element of the crime that you not have a permit, that that would not give reasonable suspicion or presumptive illegality. There is a difference between the argument, the difference between an element and an affirmative defense, but even if it's an element of the crime, this court shouldn't impose upon officers the burden to disprove every element of a crime in order to have reasonable suspicion. There are scenarios where I think even in Nebraska where it's an element, officers would have reasonable suspicion if somebody was carrying a gun that they were committing a crime, including walking away from officers late at night in an area where there had been shots fired before. So, again, it's a very fact-intensive discussion. I would also note a number of the cases cited by the defendant to argue that carrying a firearm shouldn't be presumptively illegal don't actually involve concealed carry cases. City of Lincoln v. Duffy is an open carry statute is what they're looking at in that particular case, as well as Northrop, I believe, and a case called Black that I think is cited in the defense brief, where if somebody is carrying it openly and officers can see it, they can't presume it's illegal. In a concealed carry situation, however, it makes the dangerousness more prevalent, just increases the dangerousness when you have a concealed weapon versus an open carry weapon. How do you read Duffy, counsel? Do you think it's a case dealing with the reliability of the information that the officers had, or if it's a case that deals with the reasonableness, had that information been reliable of the officers moving to a tariff stop and reliance on it? Yes, Your Honor, I believe it's more along the lines of the former, that it's a reliability issue that the information provided about this particular vehicle was not reliable enough to justify the stop and the actions they took. That doesn't get to the reasonableness issue at all. It's just that the information itself was unreliable, and so it had to be unreasonable. Is that it? Your Honor, it touches on the reasonableness, and the court goes a little farther to talk about whether or not it can be illegal to carry a gun openly in Nebraska. But I think ultimately the main basis of that decision was that the information was not reliable enough. Before we leave it, our court in Duffy does have the flat statement, the mere report of a person with a handgun is insufficient to create reasonable suspicion, period.  And more poignantly, they cite a Supreme Court case about no automatic firearm exception to our reliability analysis. So you're sure Duffy is so easy to dismiss? Your Honor, I don't think it's easy to dismiss, and it's certainly instructive for the court. But I think particularly when you look at it on the facts, it's distinguishable enough from this case that it's not in any way controlling on the court. Not only does it deal with an open carry statute, but it also deals with unreliable information, whereas in this case the information is very reliable. Actually, it's not a tipster. It's not an anonymous person. It's a civilian witness who found a loaded magazine. So it can be distinguished on a number of grounds. You agree with the other side? There's never an explanation or even speculation as to how that magazine got in somebody else's laundry basket? Your Honor, I think there's some implied speculation in that if you look at the testimony of the officer and you can actually hear the body cam, Exhibit A, that was admitted at the suppression hearing, captures a conversation the officer had with the reporting witness. But she doesn't connect it to anything. She does not. Yeah. But she does say that when she went to get the, that there was not a loaded magazine in this laundry basket, she put her clothes in it, took them out, and there was one. There it was, yeah. And there were these two other people. She did not want to, because she had not seen them with a gun, had not seen them, she didn't want to point the finger at them. But I think you can imply that that's probably where it came from, and that's what these officers did. They certainly at least had reasonable suspicion that that's where the magazine came from. The officer does admit it's possible that another laundromat customer had since left the laundromat and left the magazine there, right? I believe so, Your Honor. Does that defeat reasonable suspicion? No, Your Honor. I do not believe it does. This is not a situation where it's a high traffic time for this particular laundromat. It's midnight. So while it's possible, anything is possible. As I think some trial lawyers sometimes make, it's possible a space alien came down and put the— Well, yeah, but before you go there, does the body cam have audio, too? I'm sorry, I don't know that. It does, Your Honor. Okay, well, did he ask Ms. Lindsay, because he's responding to that, and he says, I don't believe I asked her, but it's possible. Does the body cam show he asked Ms. Lindsay that very question? Of whether— Yeah, whether other people had passed through in that period of time. I believe he does, and there are other people already present at the laundromat by the time the officers arrive. There's a third man in tan standing with the two individuals in black. So there's no doubt there had been some traffic at the laundromat before the officers arrived. What about the fact your officer says several times there were no furtive movements? Do you know that? Two or three times the officer says, yes, correct, no furtive movements, no furtive movements, making no furtive movements inside the bathroom, no furtive movements before he went to the bathroom. He agrees with that several times. What about that? Yes, Your Honor. I think if there had been furtive movements, that certainly would add to reasonable suspicion, but the lack of furtive movements doesn't necessarily mean there is no reasonable suspicion. Most of the walking away cases, as you know, it's the Supreme Court that says you can walk away. Yes, Your Honor. Yes, and that's not reasonable suspicion or anything, says the Supreme Court. So you think most of those cases that distinguish the Supreme Court say there was a furtive movement with it, but you think here you've got enough even without furtive movements. Correct, Your Honor. I think, again, there's two facts in particular that create the reasonable suspicion from the walking away or that that adds to the reasonable suspicion, the loaded magazine, but also the fact that he walked away briskly. Walking away from an officer at a normal pace is different than walking away briskly. And also a third fact I forgot, again, to go back to, that the fact that this defendant did not walk away until he saw that the officers were about to approach him. Now, the Supreme Court always acts like you've got to have the Terry reasonable suspicion before they walk away. Their words in Florida v. Royer are absent reasonable suspicion justifying a Terry investigative stop. That's the precondition in time. The citizen is free to refuse, answer questions, and walk away. And then they say later that's not reasonable suspicion at all. How much of a barrier is Florida v. Royer for you? Your Honor, I don't believe it's a substantial barrier. Again, in this case, the loaded magazine, the time of the night, the fact that these were the only two. Well, do you have to have a reasonable, better question, do you have to have reasonable suspicion before he walks away? Your Honor, I don't know that that's a requirement. I haven't, I'm not familiar with that particular citation that you read. Florida v. Royer, 1983 Supreme Court case. Yes, the particular quote, Your Honor. I haven't done any research to see if that's been distinguished. And you can do a 28-J if you're, once an argument, you can do that if you're really surprised. Yes, Your Honor. You can do a 28-J if you felt it appropriate. Go ahead. Appreciate that, Your Honor. Does your argument, I mean, your responses support Mr. Sykes? I guess one of his arguments is that if we adopt your view, it's actually going to grant more discretion to officers? Your Honor, I don't... In cases of all heretofore granted? Your Honor, I don't think if this court affirms, the district court, that it's going to grant any more discretion to officers. It's simply applying the law, the reasonable suspicion law that has been the law of the land for many years. And if it weren't for the Iowa permit statute, there'd be no question about this case for us, really? Well, I shouldn't say it that boldly, but the permit issue is the key to this case? I mean, the overriding decision we have to make about it? Your Honor, I don't know if I'd go that far. I mean, I think it's ultimately a factual determination of reasonable suspicion. The statute does criminalize gun possession, and in these particular facts, the officers were justified in conducting the terrorist stop because of that reasonable suspicion. Your argument would be, in a way, although you don't state it quite that boldly, there'd be no parade of horribles if we affirm? I do not believe there will be, Your Honor. This is not a situation where officers are going to start stopping every single person on the street to see if they have a gun. They have to have that reasonable suspicion that somebody is possessing a firearm before they could do that. Or there's a magazine in the area? Yes, Your Honor. Well, that provides a reasonable suspicion. I guess this proves, once again, like snowflakes, there are no two cases alike on the facts. I would agree with that, Your Honor. I notice my time is up, so unless there are any further questions, we ask the Court to affirm the lower court. Very well. Thank you for your argument. This clerk will hear from you on rebuttal. I first want to amend an earlier response about whether it matters whether the firearm is loaded or unloaded. There are exceptions under the carrying weapons statute where it does matter whether it's loaded or unloaded. That's not what we're relying on in this case, but they do exist under that statute. Turning to the reasonable suspicion of just the possession of a firearm itself here, law enforcement did not have the required suspicion that Mr. Sykes possessed a firearm. The information in general is incredibly weak. I would note that this question I've heard the word incredibly several times, but this may be an overstatement to say it's incredibly weak. Marginally strong, we might say. Not strong enough. Here, all the law enforcement officers had was a statement from a witness that there was a handgun magazine found in a laundry basket. It was found under her friend's clothes. What this witness doesn't state is when she found it. When she found it in reference to the time that she called law enforcement. If it's possible that that handgun magazine had been in that basket for quite some time. If in the time prior to when she found it in the basket, there were other people in the laundromat. This vague information is just simply not enough to justify. Help me on that because I don't know the answer. Does the body cam tape say the officer did ask about how to get rid of other people here? It doesn't ask specifically earlier in the night is my recollection. Were there other people here? My understanding is she states that when she found it that they were Mr. Sykes and his friend were the only other two people in the laundromat. I would defer to the whatever it states, but that's my recollection of the body cam. So it doesn't get into what's really relevant is earlier in the night when it would have been. However, it got into that basket. Who else was there? Instead, all we have is that she indicates that she found it when she found it. Mr. Sykes and his friend were the only persons there, and that earlier they were near it. Not even that they were using this basket, but that they just happened to be standing near it. This information alone, combined with Mr. Sykes walking away, is not enough to establish reasonable suspicion that he had carried a firearm. A bigger problem with this is that much of the information is not tied to Mr. Sykes in particular. It could go to both Mr. Sykes and his friend. And Terry requires particular suspicion that that individual is committing a crime, not maybe someone in that group is committing a crime. I've forgotten. What about the friend? How did the officers interact with the friend? That came later. After Mr. Sykes was seized and stopped and frisked, then they spoke with his friend. In your view of the law that should be applied in this case, what should the officers have done? Or what could have they... Well, I suppose you wouldn't argue that they could take the loaded magazine with them and go out searching for somebody else who had put it there? They had the loaded magazine. I believe that... Does that eliminate any public safety element of the case? It would. They wouldn't leave it lying in that basket, of course. Doesn't it seem more than passing strange that they would not inquire of the other person who was there? They could try to initiate a consensual encounter, sure. But what this really comes down to is that the Iowa legislature has entrusted its citizens that some of you... And it's very easy to obtain a concealed carry permit in Iowa. Is that in the record in this case? It's easy to get a concealed carry permit? Not easy, the descriptor I use. But what did the police officer say about that? Was the police officer asked something like that? Yes. Well, not about how easy it is to obtain a permit, Your Honor. Are there a lot of them or something like that? Yes. Was he asked anything like that? Yes, he was, Your Honor. And what did he say? He said it was more common for him to see individuals who have concealed carry permits in recent time. He did acknowledge that it's become more common in Iowa to see people with concealed carry permits. He doesn't talk in frequency terms in any way? Nothing more... More likely not to be or anything? He doesn't give anything I don't think incredibly specific. He just states that it's become more common in Iowa. If there are no further questions, we would ask that this court reverse the denial of the motion to suppress. Thank you. We thank you for your argument also. The case is now submitted, and we will take it under consideration.